## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DESIREE HAGUE and KIMBERLY KEENER,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:14cv655 |
| v. | ) | **Electronic Filing** |
| | ) | |
| **ALEX E. PARIS CONTRACTING COMPANY, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OPINION</u>

September 29, 2016

### I.    INTRODUCTION

Presently before the Court is the September 21, 2015 motion for summary judgment (ECF No. 61) filed by Alex E. Paris Contracting Company, Inc. ("Defendant" or "AEP"), pursuant to Federal Rule of Civil Procedure 56(a).  Defendant seeks judgment as a matter of law with respect to all claims stated in the April 3, 2015 second amended complaint (ECF No. 38) filed by Desiree Hague ("Ms. Hague") and Kimberly Keener ("Ms. Keener") (*collectively* "Plaintiffs") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 *et seq.* ("PHRA"), for sexual harassment and retaliation.  This Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a).  After careful consideration of the

motion, the memoranda of the parties, and the entire record, the Court will grant Defendant's motion for summary judgment, in part, and deny, in part.


## II.    PROCEDURAL AND FACTUAL BACKGROUND

In August 2011, Ms. Hague and Ms. Keener – daughter and mother – began employment as Flaggers for AEP.  (ECF Nos. 38 ¶ 8; 54 ¶ 8).  Ms. Hague and Ms. Keener applied for the positions through the United Steelworkers Union ("Union").  (ECF Nos. 63 ¶¶ 1 – 3; 65 ¶¶ 1 – 3).  New Flaggers are generally pulled from a list provided to AEP by the Union.  (ECF Nos. 63 ¶ 11; 65 ¶ 11).  Ms. Hague and Ms. Keener were subsequently hired as Flaggers, and attended a 45 minute orientation session with approximately 20 – 25 other new employees of AEP.  (ECF Nos. 63 ¶¶ 4 – 5; 65 ¶¶ 4 – 5).  Plaintiffs also became members of the Union at that time.  (ECF Nos. 63 ¶ 19; 65 ¶ 19).

In her deposition, Ms. Keener stated that the AEP orientation was meant primarily to inform new employees "[n]ot to discriminate, you know against each other and how to treat people at work," although it had always been Ms. Keener's understanding that at any job there should be "no sexual discrimination or discrimination, period."  (ECF Nos. 63 ¶¶ 6 – 7; 65 ¶¶ 6 – 7).  Ms. Hague could not recount being presented with AEP's sexual harassment policy during orientation, and never observed any notices or sexual harassment policies posted in her place of work.  (ECF Nos. 63 ¶ 8; 65 ¶ 8).  Following orientation, Plaintiffs both signed a form indicating that they had received a "New Employee Packet."  (ECF Nos. 63 ¶ 16; 65 ¶ 16).  They also received the business card of William Santa.  (ECF Nos. 63 ¶ 17; 65 ¶ 17).

William Santa ("Mr. Santa") is the Risk Manager for AEP, having held that position for five of the nine years he has been employed by AEP.  (ECF Nos. 63 ¶ 9; 65 ¶ 9).  As Risk

Manager, Mr. Santa is responsible for human resources functions, including acting as a liaison between AEP and the Union and orientation of new employees; there are three other employees who also conducted the orientations.  (ECF Nos. 63 ¶¶ 12 – 13; 65 ¶¶ 12 – 13).    Mr. Santa reports directly to Alex Paris and Tim Paris, the owners of AEP.  (ECF Nos. 63 ¶ 10; 65 ¶ 10).

Plaintiffs were assigned to a 16-member paving crew at AEP.  (ECF Nos. 63 ¶ 25; 65 ¶ 25).  This crew was supervised by foreman John Fisher ("Mr. Fisher").  (ECF Nos. 63 ¶ 26; 65 ¶ 26).  Plaintiffs reported to Mr. Fisher, and he directed their work on a daily basis.  (ECF Nos. 63 ¶ 28; 65 ¶ 28).  Mr. Fisher was supervised by Ron Bradburn ("Mr. Bradburn").  (ECF Nos. 63 ¶ 29; 65 ¶ 29).  Mr. Bradburn was not always at the worksites, but Ms. Hague usually saw him at least once a day.  (ECF Nos. 63 ¶ 30; 65 ¶ 30).

Ms. Hague claims that she began having problems with Mr. Fisher in 2012.  (ECF Nos. 63 ¶ 34; 65 ¶ 34).  Beginning in April of that year, Mr. Fisher allegedly forced Ms. Hague to have sexual intercourse while transporting her – alone – to a worksite portable toilet.  (ECF Nos. 63 ¶ 35; 65 ¶ 35).  Ms. Hague never reported the incident, and worked the rest of that day.  (ECF Nos. 63 ¶ 36; 65 ¶ 36).  She never sought treatment at a hospital or with her doctor, and never reported to law enforcement that a crime of a sexual nature had been committed against her.  (ECF Nos. 63 ¶¶ 37 – 39; 65 ¶37 – 39).  There is no physical evidence of the alleged assault.  (ECF Nos. 63 ¶ 41; 65 ¶ 41).  Ms. Hague remained silent out of fear of losing her job at AEP.  (ECF Nos. 63 ¶ 44; 65 ¶ 44).

Ms. Hague continued to work with Mr. Fischer and was subjected to unwelcome sexual advances almost daily for the next year.  (ECF Nos. 63 ¶¶ 45 – 46; 65 ¶¶ 45 – 46).  This included Mr. Fisher putting his tongue in Ms. Hague's mouth and sliding his hands down her pants.  (ECF Nos. 63 ¶ 47; 65 ¶ 47).  Mr. Fisher is also accused of sending text messages of a sexual nature –

including pornographic images – to Ms. Hague.  (ECF Nos. 63 ¶¶ 49 – 50; 65 ¶¶ 49 – 50).   Ms. Hague did inform her mother about the text messages, and when Ms. Keener confronted Mr. Fisher about the messages, he replied that Ms. Hague was not the intended recipient.  (ECF Nos. 63 ¶¶ 52 – 53; 65 ¶¶ 52 – 53).  The text messages stopped after that confrontation.  (ECF Nos. 63 ¶ 53; 65 ¶ 53).  Mr. Fisher also told sexually suggestive jokes to Ms. Hague, and Ms. Hague would respond by telling Mr. Fisher to "leave me the fuck alone."  (ECF Nos. 63 ¶¶ 56 – 57; 65 ¶¶ 56 – 57).  Ms. Hague expressed to Ms. Keener that "she could get [Mr. Fisher] for sexual harassment."  (ECF Nos. 63 ¶ 62; 65 ¶ 62).  Ms. Keener was not otherwise aware of what had transpired between Mr. Fisher and her daughter.  (ECF Nos. 63 ¶ 87; 65 ¶ 87).

Ms. Hague never inquired about filing a complaint while employed at AEP.  (ECF Nos. 63 ¶ 63; 65 ¶ 63).  She claimed that Mr. Fisher told her to remain silent or they would both lose their jobs.  (ECF Nos. 63 ¶ 64; 65 ¶ 64).  After refusing sexual advances by Mr. Fisher in April 2013, he provided Ms. Hague with a Wendy's restaurant application and told her that she would need it.  (ECF Nos. 63 ¶ 65; 65 ¶ 65).  Plaintiffs were laid off shortly thereafter.  Ms. Hague and Ms. Keener had never been disciplined by AEP.  (ECF Nos. 63 ¶¶ 32 – 33; 65 ¶¶ 32 – 33).

Ms. Hague and Ms. Keener also noted that throughout the duration of their employment with AEP, there were other instances of sexual harassment in the workplace by Mr. Bradburn and truck driver/mechanic William Wells, as well as Mr. Fisher.  These allegedly occurred daily, and included statements to the effect that the women's reflective vests should be shorter, as well as statements such as stop "running your cocksucker," and "get those whores out of here." (ECF Nos. 63 ¶¶ 69, 73 – 74, 80; 65 ¶¶ 69, 73 – 74, 80).  Ms. Keener did inform Mr. Bradburn about the inappropriateness of some comments, and the comments would cease.  (ECF Nos. 63 ¶¶ 71, 75, 77, 81; 65 ¶¶ 71, 75, 77, 81).

4

Plaintiffs' last day with the paving crew was April 26, 2013.  (ECF Nos. 63 ¶ 88; 65 ¶ 88).  They claim that they were laid off on May 11, 2013.  (ECF Nos. 63 ¶ 89; 65 ¶ 89).  Plaintiffs did not report to the Union within 48 hours of being laid off by AEP.  (ECF Nos. 63 ¶ 23; 65 ¶ 23).  They did not inform the Union for another week or week-and-a-half.  (ECF Nos. 63 ¶ 24; 65 ¶ 24).  Plaintiffs were never called back to work for AEP.  AEP now uses Flaggers supplied by private contractors for short-term projects.  (ECF Nos. 63 ¶ 94; 65 ¶ 94).  AEP still uses Union Flaggers for long-term projects.  (ECF Nos. 63 ¶ 95; 65 ¶ 95).

One or about August 15, 2013, Ms. Hague informed her mother about Mr. Fisher's sexual assault in April 2012.  (ECF Nos. 63 ¶ 99; 65 ¶ 99).  Ms. Keener proceeded to tell her boyfriend, Bill Phillips ("Mr. Phillips").  Mr. Phillips was an AEP employee, and on or about August 26, 2013, he reported the incident to Union representative Chris Bogovich ("Mr. Bogovich").  (ECF Nos. 63 ¶¶ 100 – 01; 65 ¶¶ 100 – 01).  On August 28, 2013, another Union representative informed Mr. Santa of the allegations.  (ECF Nos. 63 ¶ 103; 65 ¶ 103).  Shortly thereafter, written complaints from the Union were sent to Mr. Santa.  (ECF Nos. 63 ¶ 104; 65 ¶ 104).

On September 4, 2013, Mr. Santa and Mr. Bogovich interviewed the Plaintiffs.  (ECF Nos. 38 ¶ 17; 54 ¶ 17).  Mr. Santa typed his interview notes and asked the Plaintiffs to review same for errors.  (ECF Nos. 63 ¶ 106; 65 ¶ 106).  Mr. Santa also interviewed other relevant AEP employees, including Mr. Fisher and Mr. Bradburn.  (ECF Nos. 63 ¶ 107; 65 ¶ 107).  Mr. Santa forwarded copies of his typewritten investigation and interview notes to the Union.  (ECF Nos. 63 ¶ 108; 65 ¶ 108).  Alex Paris was also informed of the investigation results.  (ECF Nos. 63 ¶ 109; 65 ¶ 109).  Mr. Santa thereafter issued written warnings to Mr. Fisher and Mr. Bradburn, but took no further action due to a lack of evidence to support Ms. Hague's claims against Mr.

Fisher.  (ECF Nos. 63 ¶¶ 110 – 11; 65 ¶¶ 110 – 11).  Information regarding the disciplinary actions was also sent to the Union.  (ECF Nos. 63 ¶ 114; 65 ¶ 114).

On October 18, 2013, Plaintiffs filed a Charge of Discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  A Notice of Right to Sue letter was issued by the EEOC on April 28, 2014.  Plaintiffs consequently filed a Complaint (ECF No. 1) in this Court on May 20, 2014.  An Amended Complaint (ECF No. 38) followed on April 3, 2015.  Defendant filed its Answer (ECF No. 54) on July 9, 2015.  A Motion for Summary Judgment (ECF No. 61) by Defendant followed on September 21, 2015.   The matter is fully briefed (ECF Nos. 62 – 63, 65 – 68), and ripe for disposition.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*. 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment).

6

The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e, depositions, answers to interrogatories, and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.2d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F.App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

## IV.   DISCUSSION

### A.   *Hostile Work Environment*[1]

At Count I of their Amended Complaint, Plaintiffs assert hostile work environment claims pursuant to Title VII and the PHRA. (ECF No. 38 at 5). It is argued that the conduct exhibited by Mr. Fisher – beginning with the rape of Ms. Hague and continuing for a further

---

[1]   Title VII is "construed consistently" with the PHRA; therefore, the Court need not discuss Plaintiffs' PHRA claims separately from their Title VII claims. *Weightman v. Bank of New York Mellon Corp.*, 772 F.Supp.2d 693, 701 n. 3 (W.D. Pa. 2011) (citing *Gomez v. Allegheny Health Serv., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995)).

year in the form of unwelcome, forced fondling, kissing, inappropriate text messaging, and

sexually charged speech – created a work environment sufficiently hostile to change the terms

and conditions of Ms. Hague's employment. (*Id.*). Plaintiffs contend that Ms. Keener's terms

and conditions of employment were similarly altered by a hostile work environment as the result

of a series of sexually-charged statements made by male co-workers and supervisors over the

course of two years. (*Id.*). Defendant responds by first alleging that Plaintiffs did not timely file

a charge of discrimination with the EEOC and cannot, therefore, maintain any claims to the

extent that these cover conduct occurring prior to December 22, 2012. (ECF No. 62 at 4 – 6).

Further, neither the continuing violation doctrine nor equitable tolling will allegedly afford

Plaintiffs any relief. (*Id.* at 4 – 10).

As an initial matter, the Court notes that Title VII makes unlawful sexual harassment that

is "'sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and

create an abusive working environment.'" *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157,

167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To

succeed on such a claim, a plaintiff must establish the existence of an unlawful employment

practice by demonstrating that: 1) he or she suffered intentional discrimination because of

gender, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally

affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person under

similar circumstances, and 5) the existence of *respondeat superior* liability. *Id.* (citing *Jensen v.

Potter*, 435 F.3d 444, 449 (3d Cir. 2006)).

Further, "'isolated incidents (unless extremely serious) will not'" sustain a hostile work

environment claim. *King v. City of Phila.*, 66 F.App'x 300, 305 (3d Cir. 2003) (quoting

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). As such, a hostile work

8

environment claim is typically "'composed of a series of separate acts that collectively constitute one 'unlawful employment practice' and cannot be said to occur on any particular day.'" *Mandel*, 706 F.3d 165 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Therefore, absent a sufficiently extreme discrete act, a plaintiff is required to show that "all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* at 165 – 66. In Pennsylvania, a plaintiff has 300 days from the time of the purported unlawful employment practice to file a hostile work environment charge with the EEOC. *Id.* at 165 (citing 42 U.S.C. § 2000e-5(e)(1)).

Defendant believes that because the rape of Ms. Hague at the hands of Mr. Fisher was arguably sufficient on its own to demonstrate severe or pervasive conduct, that it could not also be characterized as a component of an ongoing unlawful employment practice. However, "hostile environment claims are different in kind from discrete acts." *Morgan*, 536 U.S. at 115. "Their very nature involves repeated conduct." *Id.* A determination of the severe and pervasive nature of alleged harassment requires the Court to consider the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Court must not parse out individual incidents, but view the surrounding facts as a whole. *Id.* The central focus is the "cumulative effect of individual acts." *Morgan*, 536 U.S. at 115.

Ms. Hague testified in her deposition that she started to experience trouble with Mr. Fisher about one year into her position. (ECF No. 63-3 at 15). Her harassment began with a

rape, and continued over the course of a year during which she was subjected to Mr. Fisher forcefully kissing her, fondling her, and placing his hands in her pants nearly every day. (ECF No. 63-3 at 25). He directed offensive sexual jokes to Ms. Hague, and sent pornographic text messages to her cellular phone. (ECF No. 63-3 at 17). While the rape may have been sufficient, alone, to meet the requirements of a hostile work environment claim, Mr. Fisher's conduct – when viewed in the light most favorable to the non-moving party – clearly suggests "a persistent, ongoing pattern" characteristic of a continuing violation. *Mandel*, 706 F.3d at 167. The rape was merely the first unlawful employment practice to occur, and all subsequent events stemmed from it. The subsequent unwelcome sexual assaults and harassment occurring within the 300 day period make the rape and all other conduct occurring prior to December 22, 2012 part of the whole for purposes of the hostile work environment claim. *Morgan*, 536 U.S. 117 – 18. Thus, the continuing violation doctrine precludes exclusion of evidence of Mr. Fisher's conduct occurring prior to December 22, 2012. The Court need not reach the issue of equitable tolling.[2]

As to her *prima facie* demonstration of hostile work environment, the Court finds that – viewing the aforementioned facts of Ms. Hague's treatment at the hands of Mr. Fisher in the light most favorable to her – Ms. Hague satisfies the first four elements. The fifth and final element requiring evidence of *respondeat superior* presents a much closer issue. "If a harasser is the victim's supervisor, then the employer may be strictly liable." *Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, -- F.Supp.3d --, 2016 WL 1069099 at * 21 (W.D. Pa. Mar. 17, 2016)

---

[2]     Incidentally, when viewed in the light most favorable to the non-moving party, Plaintiffs' testimony establishes that there were no posted notices regarding AEP's sexual harassment policy. As such, even if there was not a continuing violation, equitable tolling would likely apply. *Hammer v. Cardio Med.Prod., Inc.*, 131 F.App'x 829, 831 – 32 (3d Cir. 2005).

(citing *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 107 (3d Cir. 2009)).

However, if the harasser is merely a co-worker, the employer may be held liable only where the

victim can demonstrate that it was negligent in controlling work conditions.  *Id.* (citing *Vance v.*

*Ball State Univ.*, -- U.S. --, 133 S.Ct. 2434, 2439 (June 24, 2013)).  Presently, Ms. Hague argues

only that Mr. Fisher was her supervisor.  (ECF No. 66 at 16 – 18).  Defendant contends that Mr.

Fisher lacked all indicia of a "supervisor" for purposes of establishing *respondeat superior*

liability.  (ECF No. 62 at 19 – 21).

"Determining whether an individual has sufficient supervisory power is a fact-intensive

inquiry principally hinging upon whether an employee is sufficiently senior that knowledge of

discrimination is important to his or her duties."  *Bumbarger*, 2016 WL 1069099 at * 21.  The

Court therefore looks to whether the harasser was empowered to take tangible employment

actions, e.g. hiring, firing, failing to promote, reassignment with significantly altered

responsibilities, or effecting a significant change in benefits.  *Id.* (citing *Vance*, 133 S.Ct. 2439).

Yet, if the supervisor did not take a tangible employment action against the victim, the employer

may assert the following affirmative defenses: "'(a) that the employer exercised reasonable care

to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff

employee unreasonably failed to take advantage of any preventive or corrective opportunities

provided by the employer or to avoid harm otherwise.'"  *Id.* (quoting *Burlington Indus., Inc. v.*

*Ellerth*, 524 U.S. 742, 765 (1998)).

With respect to whether or not Mr. Fisher was Ms. Hague's supervisor, the Court takes

note that Mr. Fisher testified that he was the foreman/ crew leader for Plaintiffs' crew, and that

he had the responsibility to assign job duties on-site and to handle on-site discipline.  (ECF No.

65-3 at 2 – 3, 5).  Mr. Fisher organizes the job he is supervising, and informs his crew members

regarding how the job is to be performed.  (ECF No. 65-3 at 5).  In their depositions, the testimony of Mr. Fisher and Mr. Bradburn indicated that they had some degree of input into promotions and terminations, and determined if Flaggers would be needed for a particular job.  (ECF Nos. 67-1 and 67-3).  Mr. Fisher also stated that it was his responsibility to report misconduct by crew members to Mr. Santa.  (ECF No. 67-3 at 1 – 2).  Viewed in the light most favorable to the non-moving party, this evidence tends to show that Mr. Fisher sat in a supervisory position over members of his crew – including Ms. Hague – and that knowledge of his crew members' conduct was important to his duties.  Thus, Ms. Hague has made a *prima facie* demonstration of *respondeat superior*.

Nonetheless, Defendant asserts that the affirmative defense precludes liability, because Mr. Fisher was not responsible for any tangible employment actions.  Assuming, *arguendo*, that Defendant's contention is correct, the defense still "'depends on the reasonableness of both the employer's and the plaintiff's preventative and remedial measures.'"  *Bumbarger*, 2016 WL 1069099 at *23 (quoting *Cardenas v. Massey*, 269 F.3d 251, 266 (3d Cir. 2001)).  Viewed in the light most favorable to Ms. Hague, the Court finds Defendant's argument unavailing.

There is a factual dispute that exists as to what was provided to Plaintiffs during the new-employee orientation and whether notices of AEP's discrimination policies were properly posted in the workplace.  (ECF Nos. 63-2 at 7, 11; 63-3 at 5).  Even though the Plaintiffs signed a form indicating that they received their orientation packet, there is no indication as to what was contained in the packet, or whether AEP's sexual harassment policy was explicitly mentioned.  (ECF Nos. 63-2 at 7, 11; 63-3 at 5).  Mr. Bradburn testified that he was familiar with the sexual harassment policy at that time, but had never seen it.  (ECF No. 65-4 at 6 – 7).  Mr. Fisher had seen the policy, but never read it.  (ECF No. 65-3 at 7).  Mr. Santa stated that the sexual

harassment policy was supposed to be included in the orientation packet and was supposed to be discussed, but could not make that claim with certainty, because he did not attend every orientation. (ECF No. 63-4 at 29 – 30, 32). Whatever the reasonableness of Ms. Hague's failure to report her harasser prior to her termination, it is clear that AEP did not take reasonable steps to prevent or correct harassment by ensuring that its employees were aware of harassment policies. Therefore, Defendant's affirmative defense fails at summary judgment.

The above notwithstanding, the facts – even viewed in the light most favorable to the non-moving party – do not establish a *prima facie* case of hostile work environment with respect to Ms. Keener. In her testimony, Ms. Keener stated that Mr. Bradburn once referred to Plaintiffs as whores. (ECF No. 63-2 at 29). She also asserted that she took claims of harassment by Mr. Wells to Mr. Bradburn approximately six times over a two year period, once relating to his statement that she should stop running her "cocksucker." (ECF No. 63-2 at 29). There were also remarks made to the effect that Plaintiffs' reflective vests should be shorter. (ECF Nos. 63 ¶¶ 69, 73 – 74, 80; 65 ¶¶ 69, 73 – 74, 80). While certainly language that is inappropriate in a work setting, the Court cannot say that it rises to the level of "severe or pervasive."

To this end, the Court must look to "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris*, 510 U.S. at 23). Moreover, "'[t]he threshold for pervasiveness and regularity of discriminatory conduct is high.'" *Bumbarger*, 2016 WL 1069099 at *15 (quoting *Greer v. Mondelez Global, Inc.*, 591 F.App'x 170, 173 (3d Cir. 2014)). Even where profanity and sexual innuendo are used on a regular basis, alleged harassment will not necessarily be found

to be severe or pervasive. *Bumbarger*, 2016 WL 1069099 at *17 (citing *Grassmyer v. Shred-It USA, Inc.*, 392 F.App'x 18, 25, 30 (3d Cir. 2010)).

Presently, Ms. Keener mentions one instance involving the use of the term "cocksucker," one instance involving the use of the term "whore," and an undefined number of instances involving remarks about the length of her reflective vest over a two year period. Ms. Keener did not describe other instances with any degree of specificity. This is inadequate for purposes of a hostile work environment claim. *See Bumbarger*, 2016 WL 1069099 at *15 – 20 (conduct not found to be severe or pervasive despite plaintiff's allegations of unwelcome touching, use of sexually derogatory terms, use of general profanity, mocking and demeaning harassment, and exposure of the buttocks to the plaintiff by harasser over a five year period); *Faragher*, 524 U.S. at 788 (indicating that sporadic use of abusive language, gender-related jokes, and occasional teasing are insufficient to demonstrate a hostile work environment). Defendant is entitled to summary judgment with respect to Ms. Keener's hostile work environment claim.

  *B.  Retaliation*

Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006) (quoting 42 U.S.C. § 2000e-3(a)). In the instant case, Plaintiffs claim that they were not called back in to work for AEP as Flaggers after Ms. Hague rebuffed Mr. Fisher's sexual advances and Ms. Keener scolded Mr. Bradburn for referring to her and her daughter as "whores." (ECF No. 66 at 21). Defendant counters that

Plaintiffs' layoff did not constitute an adverse employment action, and further, that there is no causal connection between the layoff and Plaintiffs' protected activity.  (ECF No. 62 at 22 – 25).

A *prima facie* case of retaliation under Title VII requires Plaintiffs to demonstrate: 1) that they engaged in statutorily protected activity; 2) that Defendant responded by taking a materially adverse action against Plaintiffs; and 3) that there exists a causal connection between the adverse employment action and Plaintiffs' protected activity.  *Bumbarger*, 2016 WL 1069099 at \*28 (citing *Estate of Olivia v. Dep't of Law &Public Safety*, 604 F.3d 788, 798 (3d Cir. 2010)).  An Adverse employment action is any action that may have discouraged a reasonable worker under like circumstances from engaging in protected activity.  *Id.*  (citing *Moore*, 461 F.3d at 341).  Following the *prima facie* showing, it becomes Defendant's burden to put forth a legitimate, non-retaliatory reason for its conduct.  *Moore*, 461 F.3d at 342.  If Defendant makes such a showing, Plaintiffs must advance evidence sufficient to convince a factfinder that Defendant's explanation was not only false, but also that retaliation was the true purpose behind Defendant's acts.  *Id.*

Presently, Plaintiffs rely primarily upon temporal proximity to demonstrate causation. Plaintiffs engaged in protected activity in April 2013, and were not called back to work as of April 26, 2013.  Plaintiffs also point to the conflicting reports from three supervisors regarding why they were never called back into work: Mr. Fisher claims that they were not called back because they walked-off of their last job-site (ECF No. 65-3 at 10); Mr. Bradburn claims that Plaintiffs were not called back because AEP had no work for them, and decided to use contract Flaggers (ECF No. 65-4 at 9); and Mr. Santa claimed that Plaintiffs were not called back because the Union never placed them on his call-back list (ECF No. 63-4 at 36).  The Court notes, too, that the record reveals no history of discipline prior to Plaintiffs' layoff. These factors – taken

15

together and viewed in the light most favorable to Plaintiffs – are sufficient to establish a *prima facie* case of retaliation under Title VII. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (quoting *LeBoon*, 503 F.3d at 232) ("We consider 'a broad array of evidence' in determining whether a sufficient causal link exists for a plaintiff to survive a motion for summary judgment," and temporal proximity may be sufficient in and of itself if "unusually suggestive.).

Defendant responds by noting that all of the reasons provided for Plaintiffs' layoff were legitimate, non-discriminatory reasons. The Court finds that this does little to diminish the fact that Defendants provide three *different* reasons for its adverse employment action. *See Abramson v. William Paterson College of N.J.*, 260 F. 3d 265, 288 – 89 (3d Cir. 2001) (vague, inconsistent reasons for termination are relevant evidence). A factfinder could reasonably disbelieve Defendant's proffered legitimate, nondiscriminatory reason for Plaintiffs' layoff based upon this and the other evidence discussed, above. Thus, summary judgment will be denied with respect to Plaintiffs' claims of retaliation.

## V.    CONCLUSION

Based upon the forgoing, and viewing all record evidence in the light most favorable to Plaintiffs, the Court finds that Ms. Hague has adduced sufficient evidence to establish a *prima facie* case of hostile work environment under Title VII. Plaintiffs have also established a *prima facie* case of retaliation under Title VII. However, even viewed in the light most favorable to her, the facts do not establish a *prima facie* case of hostile work environment as to Ms. Keener. Accordingly, Defendant's Motion for Summary Judgment will be GRANTED, with respect to

Ms. Keener's hostile work environment claim, and DENIED with respect to all other claims.  An appropriate order will follow.

Cercone, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DESIREE HAGUE and KIMBERLY** | ) | |
| **KEENER,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:14cv655 |
| v. | ) | **Electronic Filing** |
| | ) | |
| **ALEX E. PARIS CONTRACTING** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER OF COURT</u>

AND NOW, this 29th day of September, 2016, upon consideration of the Motion for

Summary Judgment (**Document No. 61**) filed on behalf of Defendant, Alex E. Paris Contracting

Company, Inc., Plaintiff's response thereto, the briefs and appendices filed in support thereof,

pursuant to this Court's Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that the Motion Summary Judgment is granted in part and

denied in part. The Motion is **GRANTED**, with respect to Kimberly Keener's hostile work

environment claim, and **DENIED** with respect to all other claims.

s/ DAVID STEWART CERCONE
David Stewart Cercone
United States District Judge

cc:    Gregory G. Paul, Esquire
       Jana Phillis Grimm, Esquire
       Marcia L. DePaula, Esquire

       (*Via CM/ECF Electronic Mail*)